**INTERNATIONAL RESOURCE
RECOVERY, INC.,
Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Rolloffs Hawaii, Inc., Intervenor.**

**No. 04–154C.**

United States Court of Federal Claims.

Filed Under Seal June 24, 2004.[1]

Reissued: July 2, 2004.

Jeffrey I. Gdanski, Teaneck, New Jersey, for Plaintiff. Scott Gdanski and Sam Z. Gdanski, Teaneck, New Jersey, Of Counsel, for Plaintiff.

Stephen C. Tosini, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. Capt. Scott N. Flesch, Army Counsel, Arling-

---

1. This opinion was issued under seal on June 24, 2004. The Court invited the parties to submit proposed redactions by June 29, 2004. On June 29, 2004, Defendant proposed redactions of the source selection memorandum and other deliber- ative material, which Plaintiff did not oppose. Accordingly, the Court accepts Defendant's pro- posed redactions in whole, and publishes this opinion as redacted, correcting errata. Defen- dant's redactions are indicated by brackets "[ ]."

ton, Virginia, and Lt. Col. Thomas L. Hong, Army Counsel, Arlington, Virginia, for Defendant. Donald A. Tobin, Bastianelli, Brown & Kelley, Washington, D.C., for Intervenor.

## ORDER AND OPINION DENYING DEFENDANT'S MOTION TO STRIKE AND AUTHORIZING ADDITIONAL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD

WILLIAMS, Judge.

In this post-award bid protest, Plaintiff, International Resource Recovery, Inc. (IRRI), an incumbent contractor who performed trash pick-up services, challenges the Army's rejection of its proposal, claiming the rejection was arbitrary and capricious because the agency imposed more stringent requirements for a mobilization plan on IRRI than on other offerors and performed an erroneous past performance evaluation. In addition, Plaintiff alleges bad faith and bias on the part of the agency and two contracting officers.[2] This matter comes before the Court on Defendant's Motion to Strike Exhibits to Plaintiff's Motion for Judgment upon the Administrative Record.[3]

Plaintiff seeks to supplement the Administrative Record with exhibits which indicate that the Contracting Officer (CO) was biased against IRRI. The exhibits indicate, *inter alia*, that the CO had allegedly terminated IRRI's prior contract for default based upon erroneous information prior to the expiration of the cure period. The exhibits further

indicate that the CO knew that IRRI's prior termination for default had been converted to a termination for convenience, but the record is unclear as to whether or how this change in IRRI's past performance was considered in the evaluation. Plaintiff claims that its past performance report was erroneous and this was a significant factor in the agency's decision to reject IRRI's offer without conducting discussions.

Defendant contends that IRRI waived its bad faith claims, but the record does not support this assertion. Because the Administrative Record does not indicate whether IRRI's revised termination status was considered in the evaluation of IRRI's risk or how it was weighed, the record must be supplemented. As such, Defendant's Motion to Strike is denied.[4]

### *Background*

In seeking a preliminary injunction, Plaintiff argued that the Army's rejection of its proposal for failure to submit a mobilization plan was arbitrary and capricious because Plaintiff was already fully mobilized and the Army, as a matter of past practice, had not required mobilization plans from incumbents. The Court denied Plaintiff's motion for a preliminary injunction, finding that Plaintiff had failed to comply with a mandatory requirement of the solicitation calling for a mobilization plan and that the Army was not obligated to waive that requirement for incumbents. *International Resource Recovery, Inc. v. United States*, 60 Fed.Cl. 1 (2004).[5]

2. Plaintiff has changed the focus of its arguments since the Court denied its motion for a preliminary injunction, now emphasizing other allegations in its Complaint. *International Resource Recovery, Inc. v. United States*, 60 Fed.Cl. 1 (2004).

3. Defendant filed its Motion to Strike on June 4, and Plaintiff filed its Opposition on June 21, 2004.

4. In addition, because the record, even as supplemented with Plaintiff's seven exhibits, is unclear, the Court again authorizes the deposition of Contracting Officer Jaber. Because of the tight schedule in the preliminary injunction phase of this proceeding and Contracting Officer Jaber's unavailability during that time frame for his deposition, Plaintiff opted not to depose Con-

tracting Officer Jaber even though the Court had authorized it.

5. Plaintiff subsequently sought discovery, requesting that Defendant produce the mobilization plan of an incumbent in a prior procurement to show that the Army had a "past practice" of waiving mobilization plan requirements for incumbents. The Court denied Plaintiff's request, ruling that even if the Army had not required one incumbent to submit a mobilization plan, an isolated incident of waiver would not constitute a past practice requiring the Army to waive that requirement for Plaintiff. *International Resource Recovery, Inc. v. United States*, 60 Fed.Cl. 428 (2004). The Court also previously granted Plaintiff's request to depose two contracting officers and

On May 19, 2004, Plaintiff filed a Motion for Judgment upon the Administrative Record requesting a permanent injunction, changing its tack. Now Plaintiff has abandoned its past practice theory and argues that the agency's rejection of its proposal was arbitrary and capricious for different reasons, primarily relying on allegations of bad faith and bias—alleging that the rejection of its proposal was based on the personal animosity of two contracting officers.

In its Complaint IRRI alleged that Contracting Officers Phyllis Koike and Charles Jaber harbored animosity against Plaintiff, as follows:

14. The conduct of the contracting officers, Phyllis Koike and Charles Jaber, is and has been conduct that has indicated a demonstrated animosity and prejudice against IRRI based on personal ill-will and spite.

15. Koike and Jaber have repeatedly and systematically issued false statements about IRRI's past performance on military contracts to third-parties. They have done so knowing said statements are false or with a reckless disregard for the truth or falsity of said statements. Said statements have been intended to and in fact have harmed IRRI in its business. They have done so within the course and scope of their employment with the United States.

16. Jaber has intentionally, recklessly and/or negligently failed to pass on important Army documents regarding safety issues that [a]ffect IRRI's business as a contractor with the Army

. . . .

. . . .

Defendant's request to depose Plaintiff's principal. *International Resource Recovery, Inc. v. United States*, 59 Fed.Cl. 537 (2004).

6. The Court and the parties have construed these allegations as allegations of bad faith.

7. CO Jaber signed that settlement agreement which provided:

The government further agrees to upgrade the performance assessment report ("PAR") previously issued regarding the subject contract.

18. The conduct of the Army in rejecting IRRI's proposal is arbitrary, capricious, involves an abuse of discretion and is otherwise not in accordance with the law. The rejection is based in substantial part on the personal animosity of the relevant contracting officers.

Complaint ¶¶ 14–16 and 18.[6]

In its Motion for Judgment upon the Administrative Record, Plaintiff amplifies the bases for its allegations of bias and bad faith. Specifically, Plaintiff claims the Army improperly rated IRRI's past performance, incorrectly determining that it had been terminated for default on a prior similar contract when Contracting Officer Jaber knew that IRRI's termination for default had been converted to a termination for convenience as the result of a settlement agreement in litigation before the Armed Services Board of Contract Appeals (ASBCA).[7] Plaintiff argued:

In our case the government, and specifically, CO Jaber, permitted the entire source selection team [to] sign a memorandum that he knew was premised on incorrect information. CO Jaber as contracting officer for the current solicitation as well as the solicitation where he improperly terminated IRRI for default, was specifically aware that the prior termination was converted from default to convenience. However, despite knowing this, he permitted the evaluators and source selection memorandum to rely on this fact in determining that any discussion[s] held with IRRI would be futile. The [s]ource selection memorandum, signed by CO Jaber stated:

[ ]

AR, Tab 28 at 25.

The government agrees that the new ratings will be upgraded such that the Appellant will no longer be rated as unsatisfactory in any category, and the narrative language associated with the rated category will be adjusted throughout to reflect this modification. This settlement agreement will not be referenced in the modified PAR.

Plaintiff's Motion for Judgment upon the Administrative Record, Exhibit 7.

.

Therefore, the government's actions in relying on clearly erroneous information, as well as violating its settlement agreement not to cast negative inferences from its performance on that contract was in bad faith.

Plaintiff's Motion For Judgment upon the Administrative Record at 31–32.

The current Administrative Record is unclear as to whether IRRI's past performance rating was amended in the instant procurement as a result of the conversion of its default termination to a termination for convenience.[8] Although IRRI's risk rating for past performance appears to have changed from [ ] to [ ], the record does not indicate why that was done or whether, or how heavily the change in termination status of IRRI's Residential Contract was weighed in changing its rating.[9]

Plaintiff seeks to supplement the record with seven exhibits which can be summarized as follows:

- A final arbitration award decision in *Horizon Waste Services of Hawaii, Inc. v. International Resource Recovery, Inc.*, No. 02–0089A, dated November 7, 2003, relating to a subcontract between Horizon and IRRI for trash pick-up services at residential sites on Oahu, Hawaii, on which IRRI was the prime contractor with the Army (Residential Contract). The arbitrator awarded IRRI $136,395.24 as lost profits for Horizon's breach of its duty of good faith and fair dealing based upon Horizon's false statements about IRRI to the military and other efforts which were intended to undermine the military's confidence in IRRI's ability to perform. The arbitrator concluded that Horizon's conduct was one of several significant factors which lead to IRRI's termination on the Residential Contract. Arbitration Decision at 7, ¶ 9.

- Excerpts from deposition and trial testimony of CO Charles O. Jaber in *International Resource Recovery, Inc.*, ASBCA No. 53595, dated January 30, 2003, regarding his decision to terminate IRRI for default prior to the expiration of the cure period.

- Correspondence between CO Jaber and IRRI in October 2001, regarding IRRI's performance of the Residential Contract, a work stoppage caused by a strike, the cure notice and default termination.[10]

- The Settlement Agreement between IRRI and the Government in *International Resource Recovery, Inc.*, ASBCA No. 53595, dated March 19, 2003, converting IRRI's termination for default to a no-cost termination for convenience and providing that IRRI's performance assessments should be upgraded.

### Discussion

As this Court recently recognized, "[s]ome issues [in bid protests] are not amenable to record review." *Bannum, Inc. v. United States*, No. 03–1751C, 60 Fed.Cl. 718, 725, 2004 WL 1277053, at \*8 (Fed.Cl. June 8, 2004). Allegations of bias, prejudice and bad

8. Part of the problem stems from the fact that many evaluations, the SSEB consensus ratings and other procurement documents and matrices are undated. The settlement agreement was signed on March 19, 2003, and the source selection determination, on October 15, 2003. The record indicates that CO Jaber completed a questionnaire on IRRI's past performance on the Residential Contract rating IRRI's performance as [ ] but this questionnaire is not dated. AR, Tab 25 at 24–25 (unnumbered). Additional undated documents indicate that [ ] AR, Tab 22. The consensus evaluation of the SSEB, also undated, indicated that IRRI's [ ] AR, Tab 23. The contracting officer's independent rating rated IRRI [ ] for past performance, but the record does not indicate which contracting officer provided this rating or when it was done. AR, Tab 23.

9. On October 7, 2003, CO Jaber signed the source selection determination as a reviewer in his capacity as contracting officer. AR, Tab 28 at 28. The source selection determination contained the following past performance rating for IRRI's Residential Contract:

[ ]

10. Plaintiff contends that the strike was initiated by Horizon and that CO Koike had improperly contacted Horizon to take over performance of the Residential Contract prior to IRRI's termination for default during the cure period. Plaintiff's Motion for Judgment upon the Administrative Record at 25.

faith, such as those here, which depend upon a Government official's past conduct toward a bidder necessarily cannot be subsumed within the record of a challenged award decision. This Court and other fora resolving bid protests have traditionally considered extra-record evidence in assessing alleged bias or bad faith. *E.g., Galen Med. Assocs., Inc. v. United States,* 56 Fed.Cl. 104, 109 (2003), *aff'd,* 369 F.3d 1324 (Fed.Cir.2004) (allowing depositions, recognizing that "a long pattern of questionable activity might be relevant to prove agency bias"); *J.C.N. Constr. Co. v. United States,* 60 Fed.Cl. 400, 405 n. 8 (2004) (allowing depositions regarding asserted bias and de facto debarment); *Orion Int'l Techs. v. United States,* 60 Fed.Cl. 338, 343 (2004) (stating that "the record may be supplemented with ... relevant information that by its very nature would not be found in an agency record—such as evidence of bad faith"); *Cybertech Group, Inc. v. United States,* 48 Fed. Cl. 638, 651 (2001) (allowing five depositions and an evidentiary hearing on allegations of bad faith of government employees); *Buffalo Cent. Terminal v. United States,* 886 F.Supp. 1031, 1046 (W.D.N.Y.1995) (allowing discovery limited to the bad faith allegation where a plaintiff alleged bad faith on the part of agency officials and provided a reasonable factual basis for such an allegation).

Defendant contends that it would be unfair to allow supplementation of the record with these exhibits at this juncture because 1) Plaintiff has waived its claims of bad faith, 2) Defendant cannot now depose Plaintiff's principal on this new information and 3) the exhibits are inadmissible because they are unauthenticated, irrelevant and contain hearsay.[11]

■ Plaintiff has not waived its bad faith or bias claims. During oral argument upon Plaintiff's request for a preliminary injunction, Plaintiff's former counsel agreed to strike paragraphs in an affidavit of IRRI's principal relating examples of bad faith on the part of CO Jaber.[12] However, that agreement was expressly limited "[f]or purposes of this hearing on preliminary injunction," and that phase of this litigation is over. Tr. at 6, February 26, 2004. Importantly, although Plaintiff withdrew its defamation claim, it did not withdraw the bias or bad faith allegations in its Complaint.

■ The inability of Defendant to depose Plaintiff's principal at this juncture regarding CO Jaber's alleged bias is no reason to deny supplementation of the Administrative Record. Defendant was on notice of CO Jaber's alleged bias and prejudice from the Complaint, and the Court authorized a deposition of Plaintiff's principal on "the subject matter of this bid protest action," including but not limited to past practice issues. *International Resource Recovery,* 59 Fed.Cl. at 543. Moreover, the documentation and information concerning the bias and bad faith allegations should be well within Defendant's possession and control. Indeed, CO Jaber knows whether he took the actions he is alleged to have taken with respect to IRRI's default termination and with respect to the current evaluation of IRRI. In short, Defendant does not need the deposition of Plaintiff's principal to illuminate the actions and motivation of its own CO.

Nor will the Court strike these seven exhibits on admissibility grounds at this juncture. The exhibits purport to be official documents generated in an arbitration proceeding and an appeal before the ASBCA, as well as official correspondence of the parties in the Residential Contract procurement. As such, they can readily be authenticated, and appear to fall within one or more exceptions to the hearsay rule. *See, e.g.,* FED. R. EVID. 803(6), 803(8), 804(b), 807, 902(1), 902(2),

---

11. Defendant has also requested an extension of time until 30 days after the date that the Court rules on the motion to strike in which to respond to Plaintiff's Motion for Judgment upon the Administrative Record "because of the waste of Government resources involved in responding to claims that are not properly before the Court." Defendant's Motion to Strike at 8. Plaintiff does not oppose the motion.

12. On February 24, 2004, the Government filed a Motion to Strike an affidavit of Plaintiff's principal Henry Johnson in support of Plaintiff's Motion for a Preliminary Injunction. During oral argument on February 26, 2004, counsel for Plaintiff agreed to strike paragraphs 10–15 of Mr. Johnson's affidavit alleging bad faith on the part of CO Jaber. Tr. at 6.

902(4), 902(8), and 902(11).[13] Nor are these documents irrelevant; they bear directly on CO Jaber's conduct and attitude towards IRRI.

■ The Court recognizes that "allegations of bad faith must rest on a strong evidentiary footing to overcome the normal presumption of regularity and good faith conduct by agency officials." *Orion Int'l Techs.*, 60 Fed.Cl. at 344. The Court's decision in *Orion* cited a litany of decisions holding that allegations of bad faith must be based on hard facts in order to justify discovery and supplementation of the administrative record. *Id.* Such a showing has been made here by the seven exhibits, along with the Administrative Record in this case. This documentation shows that IRRI's prior termination for default was converted to a termination for convenience. However, Plaintiff contends that this change in IRRI's termination history was not properly considered by the evaluators in this procurement, and was not reflected in its rating of [ ]. IRRI argues that IRRI's resultant [ ] rating significantly contributed to the agency's decision not to conduct discussions with IRRI, which prevented it from addressing its mobilization plan.

The Court is aware that the Federal Circuit has recently articulated that "[i]n order to prevail on an allegation of bad faith, [the protester] must show 'almost irrefragable' proof." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1337 (Fed.Cir.2004). The Federal Circuit went on in *Galen* to clarify that the "clear and convincing standard of proof" was applicable, and in particular "clear and convincing evidence of a specific intent to injure the protester." *Id.* at 1330. At this juncture, this Court cannot conclude whether Plaintiff can meet that heavy burden here, but concludes the allegations appear to be sufficiently well grounded to warrant supplementation of the Administrative Record.[14] In any event the Administrative Record in this case is in a sad state and needs to be explained—evaluation documents are untitled, undated and in the case of the contracting officer's rating sheet, the author is unidentified. Further, there is no explanation of the basis of IRRI's risk rating or how its past performance contributed to that rating.

Because the allegations of bad faith, bias and erroneous past performance reviews are serious allegations which cannot be rebutted within the confines of the existing Administrative Record as supplemented, and because the contents of the Administrative Record need to be explained, the Court accepts Plaintiff's seven exhibits and authorizes the deposition of CO Jaber.

### Conclusion

1. Defendant's Motion to Strike is **DENIED**, and Plaintiff's Motion to Supplement the Administrative Record is **GRANTED**. Plaintiff shall clearly identify and authenticate the exhibits to its Motion for Judgment upon the Administrative Record and is granted leave to file a declaration or certification for that purpose by **July 2, 2004**.

2. The Court will conduct a telephonic conference on **June 29 at 3:00 p.m. EDT**.

3. The parties are authorized to take the deposition upon oral examination of Charles Jaber, prior to any further briefing in this matter and no later than **July 14, 2004**. The

---

**13.** Although Defendant objected to the documents proffered by Plaintiff on the ground that they constitute inadmissible hearsay, it did not specify what documents or portions thereof were hearsay.

**14.** The Court questions whether Plaintiff's claim of bias or bad faith can be resolved on motions for judgment upon the Administrative Record and invites the parties' comments. As the District Court in *Buffalo Cent. Terminal*, 886 F.Supp. at 1047, recognized, to the extent that allegations of bad faith involve a credibility determination, such a determination cannot be resolved on summary judgment. *Accord Bannum*,

*Inc. v. United States*, No. 03–1751C, 2004 WL 1277053, at *8 (Fed.Cl. June 8, 2004) ("[R]eserving cases that present genuine issues of material fact for trial need not delay a procurement beyond the time contemplated for record review."); *Health Sys. Mktg. & Dev. Corp. v. United States*, 26 Cl.Ct. 1322 (1992) (denying summary judgment where a bid protest involved allegations of bias and credibility of witnesses would be crucial). *Cf. Libertatia Assocs., Inc. v. United States*, 46 Fed.Cl. 702 (2000) (After trial, the Court found adequate evidence of specific intent to injure Plaintiff, required for a finding of bad faith.).

deposition shall be conducted at a time and place convenient to the parties and the witness. Because CO Jaber has had substantial interaction with IRRI both in the past and in the subject procurement, the Court permits the deposition to continue for four hours, with two hours of examination by Plaintiff and two hours by Defendant and Intervenor, to divide as they deem appropriate. *See Galen Med. Assocs.*, 369 F.3d at 1332 (holding it was proper for Court to analyze assertions of bias collectively).

4. Defendant's Unopposed Motion for an Enlargement of Time Within Which to Respond to Plaintiff's Motion for Judgment upon the Administrative Record is **GRANTED**. Defendant may respond to Plaintiff's Motion for Judgment upon the Administrative Record within 30 days of the date of this decision, on or before **July 23, 2004**. Plaintiff shall file its Reply by **August 6, 2004**.

5. The parties are directed to file any proposed redactions to this Opinion no later than **June 29, 2004**.